# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

AARON T. JAMES,                    )
                                   )
    Petitioner,                    )    Case No.  3:11-0735
                                   )    Chief Judge  Haynes
v.                                 )
                                   )
SHARON TAYLOR, Warden,             )
                                   )
    Respondent[1].                 )

## MEMORANDUM

Petitioner, Aaron T. James, filed this pro se action seeking the writ of habeas corpus to set aside his state conviction for especially aggravated kidnapping. After review, the Court appointed counsel for Petitioner and granted leave to file an amended petition. (Docket Entry No. 26). With the filing of the amended petition, Respondent filed her answer as ordered. (Docket Entry Nos. 29 and 31). In his amended petition, Petitioner asserts the following claims: (1) the lack of sufficient evidence to support his conviction; and (2) ineffective assistance of counsel for his  trial counsel's failure to object to the State's lack of notice of the State's intention to request a career offender sentence. In her answer, Respondent  asserts  this  action  is time barred, Petitioner's claims are procedurally defaulted and otherwise are without merit.

### A. Procedural History

A jury convicted Petitioner of felony escape, aggravated robbery and  especially aggravated kidnapping and upon finding Petitioner a career offender,  the state trial court sentenced Petitioner

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Sharon Taylor was substituted for fer predecessor, David Osborne. (Docket Entry No. 28, Order).

to sixty (60) years as a career offender. <u>State v. James</u>, No. M2000-00495-CCA-R3-CD, 2001 WL 732380 (Tenn Ct. Crim. App. June 29, 2001). The Tennessee Court of Criminal Appeals reversed concluding that Petitioner was prejudiced by the introduction of the particulars of his prior convictions and the Tennessee Supreme Court affirmed. <u>State v. James</u>, 81 S.W.3d 751 (Tenn. 2002). After remand, a jury convicted Petitioner of the sole charge of especially aggravated kidnapping for which Petitioner received a sixty year sentence. On appeal, the Tennessee Court of Criminal Appeals affirmed Petitioner's conviction and sentence. <u>State v. James</u>, No. M2004-400808-CCA-R3-CD, 2005 WL 1521965 (Tenn. Ct. Crim. App June 21, 2005). On December 5, 2005, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. <u>Id</u>. at *1.

On November 30, 2006, Petitioner filed his <u>pro</u> <u>se</u> state petition for post-conviction relief. <u>James v. State</u>, 2010 WL 5345077 at *3 (Tenn. Ct. Crim. App. Dec. 23, 2010). After appointment of counsel and an evidentiary hearing, the state trial court denied relief. <u>Id</u>. On December 23, 2010, the Tennessee Court of Criminal Appeals affirmed the dismissal. On May 26, 2011, the Tennessee Supreme Court denied his application for permission to appeal. <u>Id.</u> at *1.

Respondent contends that Petitioner's insufficient evidence claim was exhausted, but is time barred by federal habeas statute of limitations and his claims in the amended petition do not relate back to his <u>pro</u> <u>se</u> petition as required by <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005). Respondent also asserts that Petitioner's ineffective assistance of counsel claim for his trial counsel's failure to object to the career offender enhancement, has never been presented to a state court and is procedurally defaulted.

## B. Review of the State Record

The Tennessee Court of Criminal Appeals found the facts underlying Petitioner's conviction

on his direct appeal:

> In March of 1998, the defendant and a co-defendant, Tony Bobo, attempted to escape from Riverbend Maximum Security Prison. They first cut through the fence in the exercise yard before commandeering a delivery truck being driven by Department of Correction employee [Anna Blithe] Bobo, who was armed with a prison-made knife, directed the victim into the cab of the truck and then drove into the perimeter fence. The pair was apprehended when guards overtook them before they were able to penetrate the outermost security fence.
>
> At trial, Mark Hawood, who was working "mobile patrol" at Riverbend on the day of the attempted escape, described the facility as completely surrounded by two fences equipped with concertina and razor wires and sensors. He testified that the two fences are approximately twelve feet tall and thirty feet apart. Hawood recalled that he was in his patrol vehicle when he saw a delivery truck speeding toward the fence. According to Hawood, the truck knocked the interior perimeter fence "completely down." He stated that the driver then put the truck in reverse, drove around as if looking for a way to exit, and then returned and struck the fence in the same location. Hawood testified that he and another correctional officer opened fire on the vehicle and continued to fire until the vehicle came to a stop. The defendant was the first to exit the truck, followed by the victim, whom Hawood described as "hysterical," and finally Bobo.
>
> Lieutenant Billy James McCleskey, who was employed by the Department of Correction as an institutional investigator and internal affairs liaison officer, testified that because both the defendant and Bobo were classified as maximum security inmates, they were allowed only one hour each day outside their cells. Lieutenant McCleskey stated that when maximum security inmates are released from their cells for recreation, they are placed inside individual recreation cages, which he described as two sets of four expanded steel cages with a walkway in the center. During his investigation, Lieutenant McCleskey discovered that the defendant had cut a hole in his exercise cage, entered into Bobo's cage and then cut a hole in Bobo's cage for entry into the exercise yard. The lieutenant testified that he found a "prison-made knife," or "shank," that was approximately six inches long and one inch wide in the driver's side floorboard of the delivery truck.
>
> The victim, [Anna Blithe], a storekeeper at Riverbend, testified that on the day of the

3

offense she was delivering supplies to Unit 2, where the defendant and Bobo were incarcerated. She recalled that she turned off the ignition, put the keys in her pocket, and locked the doors before exiting the truck. As she walked toward the gate, she heard the fence rattle, saw the defendant and Bobo jump over the fence, and "froze" as Bobo "stuck a sharp object up to [her] neck." She testified that the defendant got into the truck first and she went in next so as to be seated between the defendant and Bobo, who was driving. When the victim asked the defendant why he was doing this, he responded, "[G]ot too much time, got too much time. We've got to get out of here." She stated that the defendant assured her that she would not be harmed.

The victim confirmed that Bobo drove the truck into the perimeter fence, knocking it down, and then backed up in order to gain more speed. She estimated that the truck was traveling approximately fifty miles per hour when it struck the fence a second time, clearing the first fence and partially tearing down the second. According to the victim, she then heard thumping sounds and the defendant instructed her to get down before convincing Bobo to surrender. The victim testified that the defendant opened the passenger side door and lay on the ground as she ran from the truck. She stated that the defendant never gave any indication that he was being held against his will.

During cross-examination, the victim conceded that Bobo had threatened her with the knife, had ordered her into the truck, and had driven the truck into the fence. She also acknowledged that the defendant repeatedly expressed a desire to surrender.

Bobo, as a witness for the defense, testified that prior to the attempted escape, he had been convicted of "several" murders, manslaughter, four counts of robbery, "and several other charges." He stated that two of his murder convictions were the result of killing other inmates, one of whom he bludgeoned with a dumb bell and one of whom he stabbed with a shank. He recalled that he met the defendant when the two were housed together in the maximum security unit at Riverbend. According to Bobo, he discussed the escape with the defendant on two occasions prior to the day of the offense. Bobo testified that "[t]he plan was to ... open up the exercise cages, ... go out through the hole ... and to go over the fences, you know, and just go on from there." Bobo claimed that the pair planned to climb over the fences by going over the pole to avoid setting off the alarms. He contended that the defendant was unaware of his "backup plan," which was to "grab the truck and to go through the fences." Bobo also insisted that the defendant did not know that he was carrying a shank.

Bobo explained that he decided to carry out the alternate plan because "it took so long to get the hole in the cages." He stated that the defendant did not want to take the truck and "acted like he wanted to go back." Bobo claimed that he threatened the defendant with his weapon saying, "If your word ain't worth nothing, your life ain't

worth nothing." Bobo testified that he directed the defendant to go under the fence between the exercise yard and the truck and then ordered both the victim and the defendant to get into the truck. According to Bobo, he started the truck and immediately began driving toward the fence. He testified that when he struck the second fence, the truck became stuck on the pole and the defendant told Bobo that "it was over." Bobo claimed that he refused to surrender and did not terminate the attempted escape until gunfire from correctional officers "busted the engine block." Bobo further contended that if the defendant had refused to accompany him in the truck, he would have "hurt him." Bobo admitted that he pled guilty to aggravated robbery, aggravated kidnapping, and attempted escape in connection with the incident.

During cross-examination, he acknowledged that he and the defendant had discussed escaping even before they were transferred to their cell block in Unit 2. Bobo claimed that they planned to scale the fences, which were topped with razor wire and equipped with alarms, with no extra padding under their clothing to protect them. He acknowledged that during the investigation prior to the trial, he did not inform investigators that he threatened the defendant.

James,, 2005 WL 1521965 at*1-3.

## C. Conclusions of Law

### 1. Timeliness of Petitioner's Claims

As to Respondent's statute of limitations defense, the Antiterrorism and Effective Death Penalty Act ("AEDPA") that became effective on April 24, 1996, set a one year limitations period for state habeas corpus actions. Under 28 U.S.C. § 2244(d)(1), a person convicted in state court has one (1) year from the time the conviction becomes final on direct appeal to file a federal petition. In Lindh v. Murphy, 521 U.S. 320 (1997), the Supreme Court held that the AEDPA was to be applied prospectively, i.e., beginning after April 24, 1996. In Brown v. O'Dea, 187 F.3d 572, 576-77 (6th Cir. 1999), the Sixth Circuit set a one year grace period from the Act's passage, i.e., midnight of April 23, 1997, for the filing of habeas petitions for state prisoners whose convictions were final. Accord Martin v. Jones, 969 F.Supp. 1058, 1061 (M.D. Tenn. 1997). Yet, where a federal habeas action is stayed pending exhaustion of state court remedies, the federal limitations period is tolled.

Palmer v. Carlton, 276 F.3d 777, 781 (6th Cir. 2002). Aside from the "stay and abeyance" rule, the federal limitations period can be equitably tolled under the Court's equitable jurisdiction. Souter v. Jones, 395 F.3d 577, 599-600 (6th Cir. 2005).

In addition, under 28 U.S.C. § 2244(d)(2), "[t]he time **during which a properly filed application for State post-conviction** or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection." Id. (emphasis added). " 'The [statutory] tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations'." Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (quoting Rashid v. Khulmann, 991 F.Supp. 254, 259 (S.D.N.Y.1998)). "[A]n application for post-conviction relief is 'properly filed' within the meaning of § 2244(d)(2) 'when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, ... the time limits upon its delivery'." Id at 603 (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000).) (internal quotation marks omitted)..

As applied here, under § 2244(d)(1)(A), Petitioner had one year to file this action measured from the date when his convictions "became final". Petitioner's convictions became final under Section 2244(d)(1)(A) on March 6, 2006[2], based upon the conclusion of his direct appeal (December 5, 2005) and the expiration of the ninety days to file a petition for the writ of certiorari

---

[2] Because March 5, 2006 was a Sunday, Petitioner's judgment became final on March 6, 2006. Sup. Ct. Rule 30(I); Red R. Civ. P. 6(a)(1)(C).

in the United States Supreme Court as part of his direct appeal from his conviction and sentence. See Clay v. United States, 537 U.S. 522, 527-28 (2003).. On November 30, 2006, Petitioner filed his state post-conviction petition with 268 days of federal limitation period having passed. On May 26, 2011, the Tennessee Supreme Court denied Petitioner's application for permission to appeal in his post conviction appeal. This petition in this action was received by the Clerk's office on August 11, 2011. (Docket Entry No. 1 at 1) with 76 days remaining under the federal habeas statue of limitations. Thus, this action is timely filed.

Yet, Petitioner's two of Petitioner's claims were first presented in his amended petition that was filed on August 5, 2013. (Docket Entry No. 26, Amended Petition at 5-6). From the Court's review, Petitioner's pro se petition's statement of his claims in this action does not contain any reference to the sufficiency of the evidence at his trial. (Docket Entry No. 1 at 3-5). There are, however, factual allegations concerning the State's "not filing a notice" and that his trial and appellate counsel "failed to bring this up" Id. at 4

The pendency of a federal habeas action does not toll the limitation period for filing of a federal habeas claim. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Under certain conditions, the relation back doctrine under Fed. R. Civ. P. 15(c)(2) can apply in a federal habeas action, but only to the extent that its application does not conflict with the AEDPA limitation period and the challenged claim is tied to the facts alleged in the original petition. Mayle, 545 U.S. at 649. As the Supreme Court stated in Mayle:

> An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

7

\* \* \*

Habeas Corpus Rule 11[] permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules..." Section 2242 specifically provides that habeas applications "may be amended ... as provided in the rules of procedure applicable to civil actions."

\* \* \*

If clams asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.

\* \* \*

So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.

Id at 650, 654-55, 662, 664.

Thus, the Court concludes that Petitioner's sufficiency of the evidence claim is time barred, but Petitioner's claim that his counsel failed to object to the State's lack of notice of intent to seek sentence enhancement is timely as the latter claim bears a "common core of operative facts" alleged in Petitioner's timely filed pro se petition. Mayle, 544 U. S. at 664.

As to whether this ineffective assistance of counsel claim is procedurally defaulted, in his post conviction appeal, Petitioner asserted the following claims about his prior counsel: "that his trial counsel rendered ineffective assistance by failing to request a jury instruction on the need for unanimity as to the theory of guilt; failing to move the trial court to require that the State elect a theory of guilt; and failing to object to the prosecutor's misstatement of law. The State contends that trial counsel was not ineffective because the law did not require unanimity as to the theory of guilt or election of a theory and because the prosecutor's comment during closing argument was not a misstatement of the law. We agree with the State." James, 2010 WL 5345077 at *4. From this

description, this claim was not raised on Petitioner's post conviction appeal. From the Court's review of the State appellate courts' decisions, the issue of the State's lack of notice of intent to seek an enhanced sentence was not raised.

## 2. Procedural Default Analysis

Under the "Procedural Default Doctrine" the general rule is that for federal habeas proceedings, federal habeas claims that were not fairly presented or were not presented to the State courts, are barred as claims for relief. Duncan v. Henry, 513 U. S. 364, 365-66 (1995); Coleman v. Thompson, 501 U.S. 722, 729-30 (1992). Under Duncan, the exhaustion rule requires that the claims raised in the federal petition to be "fairly presented" to the state courts. A claim supported only by citation to state law is insufficient to present a federal claim, even if the cited state decision restated an analysis of federal law. Anderson v. Harless, 459 U.S. 4, 7-8 n.3 (1982) (per curiam). The federal petitioner must inform the state courts of his federal legal theory or of the issue that arises under federal law. Franklin v. Rose, 811 F.2d 322, 325-26, (6th Cir. 1987) ("To fairly present his constitutional argument to the state courts required more than the use of a generalized catch-all phrase which merely alleged the deprivation of a fair trial under the United States Constitution.). Petitioners can cite to state law cases that were decided upon federal law grounds in similar factual circumstances. Levine v. Torvick, 986 F.2d 1506, 1516 (6th Cir. 1993). Yet, "mere similarity of claims is insufficient to exhaust." Duncan 513 U.S. at 366. The rationale for the procedural default doctrine is premised on federalism and maintaining comity with state courts. Coleman,.501 U.S. at 730, 732. The Supreme Court further recognized that state procedural rules also serve a legitimate state interest in finality of criminal convictions. Francis v.Henderson, 425 U.S. 536, 542 (1976). State procedural rules channel the

controversy to the state trial and appellate courts. <u>Murray v. Carrier</u>, 477 U.S. 478, 490-91 (1986).

Although the Tennessee appellate courts were never presented with Petitioner's ineffectiveness of counsel claim, Tennessee's statute of limitations for post conviction actions would bar this claim. Tenn. Code Ann. § 40-30-102. As the Supreme Court stated in <u>Coleman</u>, "'[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'." 501 U.S. at 751 (quoting <u>Yakus v. United States</u>, 321 U.S. 414, 444 (1944)). Thus, Petitioner's ineffective assistance of counsel claim was not fairly presented and is procedurally defaulted.

In the Sixth Circuit, the analysis for a procedurally defaulted claim is set forth in the often cited decision, <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1986):

> When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis. First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
>         *   *   *
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction.
>
>         *   *   *
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.... This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.

<u>Id</u>, at 138 (citations omitted).

### a. Noncompliance with Applicable State Rules

Here, Tennessee's limitations period provides a one year period of limitation for post conviction petitions, Tenn. Code Ann. § 40-30-102 and that statute would bar Petitioner's ineffective assistance of counsel claim. Respondent has identified Petitioner's noncompliance with an applicable state procedural rule.

### b. "Firmly Established" and "Regularly Followed" State Rules

The cited state law must also be "firmly established and regularly followed" at the time the claim arose. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The Court concludes Tennessee's post conviction limitations statute relied upon by the Respondent is firmly established and regularly enforced. See Cone v. Bell, 243 F.3d 961, 969 (6th Cir. 2001) overruled on other grounds, Bell v. Cone, 535 U.S. 685 (2002).

### c. Independent and Adequate State Rule

As to what is an independent and adequate state rule, the Supreme Court recognized the following state interests as constituting adequate grounds for state procedural rules.

> [T]he possible avoidance of an unnecessary trial or of a retrial, the difficulty of making factual determinations concerning grand juries long after the indictment has been handed down and the grand jury disbanded, and the potential disruption to the numerous convictions of finding a defect in a grand jury only after the jury has handed down indictments in many cases.

Coleman, 501 U.S. at 745-46.

Another reason to support a finding of adequate state rules was articulated in Francis, wherein the Supreme Court enforced a state rule that promoted finality, noting a comparable federal rule.

> Plainly the interest in finality is the same with regard to both federal and state prisoners. ... There is no reason to ... give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.

425 U.S. at 541-42 (citation omitted). "[W]hether the state procedural ground is 'independent and adequate' ... turns on the substantiality of the state interest involved. [A State's] interests in finality of judgment, judicial economy, and permitting defendants just 'one bite at the apple ' are both obvious and substantial." Wesselman v. Seabold, 834 F.2d 99, 100 (6thCir. 1987) (citation omitted) An exception to this rule, however, arises "where state collateral review is the first place a prisoner can present a challenge to his conviction." Coleman, 501 U.S. at 755.

As to types of procedural rules which have been found to be independent and adequate, in Coleman, the Supreme Court upheld a procedural rule that bars consideration of a federal claim for failure to meet state law requirements for timely appeals. 501 U.S. at 750-51; accord Brown v. Allen, 344 U.S. 443, 485-86 (1953) (procedural default rule applied a state rule that placed time limits on appellate rights).

Based upon Coleman, the Court concludes that Tennessee's limitations period for post-conviction petitions is an independent and adequate state rule that promotes the timely presentation of claims.

### d. The Cause and Prejudice Requirements

### (i) Cause

Upon finding a procedural default, the burden shifts to Petitioner to show cause for his procedural default and actual prejudice or to prove that the failure to consider the claim will result in

a miscarriage of justice, such as, conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 321-24 (1995). Cause for a procedural default must depend on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. Coleman, 501 U.S. at 753. The Supreme Court emphasized in Coleman that mere attorney error cannot be cause and cannot be attributable to the state. Id. at 753-54. Yet, a notice for an enhanced sentenced required by State law, is an issue that counsel would raise and as discussed below,under Tennessee law, the State's failure to do so renders the enhanced sentence beyond the authority of the sentencing judge.

### (ii) Prejudice

If Petitioner establishes "cause" for this default, Petitioner must also prove that he was "actually prejudiced by the alleged constitutional error." Maupin, 785 F.2d at 138. The Supreme Court conceded that it has not given "precise content" to the term "prejudice," that has not been defined, "expressly leaving to future cases further elaboration of the significance of that term." United States v. Frady, 456 U.S. 152, 168 (1982) (quoting Wainwright v. Sykes, 433 U.S. 72, 91 (1977). The Court concludes that if Petitioner is serving an illegal sentence, then he has shown prejudice.

### 3. Petitioner's Martinez Claim

Aside from the procedural default analysis, Petitioner relies upon Martinez v. Ryan, _U/ S. _, 1342 S. Ct. 1309 (2012) to request an evidentiary hearing on his post-conviction counsel's alleged deficiency for failing to raise the lack of notice defense, as well as relief for his counsel's ineffectiveness. Martinez created an equitable exception to procedural default that "qualifies Coleman by recognizing a narrow exception: Inadequate assistance of counsel at initial-review

13

collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315. The Supreme Court defined "initial-review collateral proceedings" as proceedings "which provide the first occasion to raise a claim of ineffective assistance at trial." Id. In Martinez, the Supreme Court expressly recognized that "[d]irect appeals, without evidentiary hearings, may not be as effective as other proceedings for developing the factual basis for the [ineffective assistance of trial counsel] claim." Id. at 1318. In Trevino v. Thaler, __ U.S.__, 133 S. Ct. 1911 (2013), the Supreme Court extended the Martinez exception where State law "does not expressly *require* the defendant to raise a claim of ineffective assistance of trial counsel in an initial *collateral review* proceeding....[but the State] law on its face appears to permit (but not require) the defendant to raise the claim on *direct appeal*." Id. at 1915 (emphasis in the original).

Based upon an analysis of Tennessee's system, this member of the Court concluded, consistent with Trevino, that Tennessee's system by "'design and operation makes it **highly unlikely** in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal'." Morrow v. Brandon, No. 3:06–0955, 2014 WL 49817 at *9 (M. D. Tenn. Jan. 7, 2014) (quoting Trevino, 133 S. Ct. at 1921and citing Fenton v. Colson, No. 3:09cv1057, 2013 WL 704317 at *13 (M. D. Tenn. Feb. 25, 2013) (emphasis in Brandon). In Sutton v. Carpenter, 745 F.3d 787 (6th Cir. 2014), the Sixth Circuit later ruled that "ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial. Id. at 795-96 (citing Martinez, 132 S. Ct. at 1320). Yet, "[t]o be successful under Trevino, ... [the habeas petitioner] must show a 'substantial' claim of ineffective assistance, Trevino, 133 S.Ct. at 1918, and this requirement applies as well to the

prejudice portion of the ineffective assistance claim. <u>McGuire v. Warden, Chillicothe Correctional Inst.</u>738 F.3d 741, 752 (6th Cir. 2013) (citing <u>Trevino</u>, 133 S.Ct. at 1918).

This Court determined that Petitioner presented a substantial claim that qualified for the <u>Martinez</u> exception. Under Tennessee law, as set forth below, serious issues of prejudice would arise because if prior to trial, the State did not provide Petitioner and his trial counsel with notice of its intent to pursue Tennessee's career offender sentence, then Petitioner's sentence would be void. Such a sentence could include life imprisonment without parole. If the State did not provide such notice, the Petitioner would have a substantial ineffective assistance of counsel claim. The technical record for Petitioner's state proceedings, filed with the Court , does not contain any such notice for Petitioner's retrial. Thus, the Court ordered the Respondent to file any notice provided to Petitioner and set an evidentiary hearing on that issue.

### a. Findings of Fact

Prior to the <u>Martinez</u> hearing, the Respondent filed two notices: (1) a March 17, 1999 notice pursuant to "Tenn. Code Ann. § 40-35-120"[3] listing the prior convictions of Petitioner and his co-

---

[3] As pertinent here, Tenn. Code Ann § 40-35-120(i)(2)(3) provide:
(2) The district attorney general shall file a statement with the court and the defense counsel within forty-five (45) days of the arraignment pursuant to Rule 10 of the Rules of Criminal Procedure that the defendant is a repeat violent offender. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant, shall set forth the dates of the prior periods of incarceration, as well as the nature of the prior conviction offenses. If the notice is not filed within forty-five (45) days of the arraignment, the defendant shall be granted a continuance so that the defendant will have forty-five (45) days between receipt of notice and trial.

(3) Failure to comply with this subsection (i) does not require release of a person from custody or a dismissal of charges.

defendant and giving notice that the State considered Petitioner eligible for a sentence as a "Repeat Violent Offender"(Docket Entry No. 43-1 at 3) and (2) an August 18, 1999 "Notice of Enhanced Punishment" under "Tenn. Code Ann. § 40-35-202"[4] referring only to Petitioner and seeking an enhanced punishment under "Tenn. Code Ann. § 40-35-106" with a list of his three convictions. Id. at 2. Under the Tennessee statutes quoted below, the State's first notice was for a "repeat violent offender" and the second notice with a different deadline for disclosure was for "multiple, persistent or career offender" or "multiple offenders". The second notice did not satisfy the statutory deadline period of 10 days prior to trial for "multiple, persistent or career offender". Tenn. Code Ann. § 40-35-202(a).

---

[4] This statute provides:
If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record.

(b) In all cases following a finding of guilt, the court may require that:

(1) The district attorney general file a statement with the court setting forth any enhancement or mitigating factors the district attorney general believes should be considered by the court; and
(2) The defendant file a statement with the court setting forth all mitigating factors known to the defendant and indicating any mitigating factors the defendant believes should be considered by the court.

16

At the Martinez hearing, Gary Tamkin, one of Petitioner's two trial counsel at Petitioner's retrial, testified that the State never provided him with any notice that the State would seek an ehnaned sentence. In addition, Tamkin testified that although he was not Petitioner's trial counsel for the first trial, Wendy Tucker who was Petitioner's counsel at his first trial and sentencing, assisted him. According to Tampkin, neither Tucker nor the State prosecutor mentioned to him that notice of a sentence enhancement for Petitioner as a "career offender". Tamkin recalled an issue about whether the "repeat offender" enhancement applied and Tampkin researched that issue. Tamkin's recollection is that the State trial court agreed that given the lack of separate incarcerations for Petitioner's enhancing sentences, that enhancement did not apply. Tamkin insists that if the State had not provided such notice, then he would have objected to any enhancement of Petitioner's sentence at the sentencing hearing. In Tamkin's experience, when the State fails to file notice of an enhancement, the State trial courts sentence the defendant as a Range One offender.

The Court's review of the sentencing transcript reveals that the State prosecutor incorporated by reference his earlier submissions on sentencing. (Docket Entry No. 15-5, Sentencing Hearing Transcript at 10). Defense counsel Tucker raised the issue of a trial court's prior decision in State v. Coffert where the State trial judge did not apply the repeat offender enhancement because of the lack of separate incarcerations for the qualifying convictions. Id. at 11. Although the sentencing hearing transcript does not reveal an express ruling on that issue, the State trial court sentenced Petitioner as a "career offender". Id. at 22

### b. Conclusions of Law

To prove ineffective assistance of counsel, Petitioner must prove his counsel's performance was deficient and this deficient performance prejudiced Petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). As to the significance of Petitioner's counsel's failure to object to the State's lack of notice to seek an enhancement, the Court examines Tennessee law on the effect of the lack of such notice and the purpose of the notice:

> Teague's contention is that the trial court was not authorized to impose Range II sentences upon him because the State failed to file any notice of intent to seek enhanced punishment, as required by section 40-35-202 of the Tennessee Code Annotated (1982).
>
>         \*                \*                \*
>
> Under the Criminal Sentencing Reform Act of 1982, Range II sentences are reserved for one who is found by the trial court to be a persistent offender and/or who is convicted for an especially aggravated offense. The sentence for a standard or especially mitigated offender shall be to a term within Range I. T.C.A. § 40-35-109(c) (Supp.1986); State v. Pender, 687 S.W.2d 714, 719 (Tenn.Cr.App.1984).

Further, the Reform Act requires:

> **If the district attorney general believes that a defendant should be sentenced to an enhanced punishment for a second or subsequent violation of the crime charged or, for an especially aggravated offense or as a persistent offender, he shall file a statement thereof with the court and defense counsel before trial or acceptance of a guilty plea on the primary offense. Such statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of prior felony convictions relied upon, the dates of the convictions and the identity of the courts of the convictions, the nature of the release status from a described prior felony conviction relied upon, and the nature of any injury or threat of injury relied upon to establish that the defendant has committed an especially aggravated primary offense.** The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, shall be prima facie evidence that the defendant named therein is the same as the defendant before the court, and shall be prima facie evidence of the facts set out therein.

T.C.A. § 40-35-202(a)(1982).

Thus, under the terms of the above statute, **it is clear that the notice must be filed by the State before trial. In addition to the trial court being put on notice of the State's intent to seek enhanced punishment, defense counsel is entitled to receive a copy of the notice. Obviously, it is highly important to a defendant and his counsel to know in advance of the trial that the defendant may be subjected to a Range II sentence if he stands trial and is convicted. Such information may well affect the defendant's trial strategy, and clearly it may be a significant factor in the defendant's decision on whether to attempt to negotiate a plea bargain with the State.**

Also, we note that in a trial court's determination of the appropriate range of sentence, the statement required by section 40-35-202 of the Tennessee Code Annotated is one of the things that must be considered by the trial court. T.C.A. § 40-35-210(d)(1982). This subsection reads:

> A sentence must be based on evidence in the record of the trial, the sentencing hearing, the pre-sentence report, and, *in the case of an especially aggravated offense or a persistent offender, the statement filed by the district attorney general with the court as required by § 40-35-202.*

(Emphasis added).

In State v. Pender, supra, our Court was confronted with the issue of the propriety of the trial court's action in imposing Range II sentences where the State had failed to file any notice of intent to seek enhanced punishment, as the State was required to do by the provisions of Tennessee Code Annotated, section 40-35-202(a) (1982). **In Pender, we held that the absence of the required notice precluded the trial court from imposing Range II punishments upon Pender. In so holding, we said: "The State did not file before (or after) trial the notice as required by T.C.A. § 40-35-202(a). Therefore we are obligated to find that the trial court was without authority to impose Range II sentences upon the defendant." 687 S.W.2d at 720.**

We see no difference between the Pender issue and the present issue. Teague was sentenced to Range II sentences for especially aggravated offenses and as a persistent offender, and the record clearly shows that the State did not at any time file the required notice.

**We find no merit to the State's argument that a violation of the notice requirements of Tennessee Code Annotated, section 40-35-202(a) (1982) should be held harmless in the absence of prejudice being shown.** For this view, the State relies on the unpublished cases of State v. Stan Lee French, No. 4 (Tenn.Cr.App., Jackson, August 9, 1984) and State v. Thomas Anderson, Jr., No. 84-92-III (Tenn.Cr.App., Nashville, February 26, 1985). Since

these cases are not published, they cannot serve as authority for the State's view. Moreover, we note that these unpublished cases are unlike the present case. Both concerned the late filing of the required notice, not the issue of the total absence of any notice.

State v. Neas, 1986 WL 12921 at *1-3 (Tenn. Ct. Crim. App. Nov. 17, 1986) (italicized emphasis in the original with other emphasis added).

More recently, in Cooper v. State, 321 S.W.3d 521 (Tenn. 2010), the Tennessee Supreme Court considered a defendant's lack of notice claim that he had not presented to the Tennessee Court of Criminal Appeals. The Tennessee Supreme Court did so because the State's lack of notice of the State's intent to seek the career offender sentence of life without parole prior to the defendant's trial violated the defendant's substantial rights.

> Although the repeat violent offender statute does not have a provision mandating a remedy similar to that of Tennessee Code Annotated section 39–13–208(c), we believe that the severity of the sentence in this case—a mandatory sentence of imprisonment for life without parole—requires a similar result. **We therefore conclude that the sentence of imprisonment for life without the possibility of parole was not authorized because the only substantially compliant notice was filed after trial and therefore was ineffective. We hold that the unauthorized sentence adversely affected a substantial right of Mr. Cooper and that remedying this error is in the interest of substantial justice. We therefore remand this case for re-sentencing in accordance with the notice filed on May 12, 2003, to seek enhanced punishment as a multiple, persistent, or career offender pursuant to Tennessee Code Annotated section 40–35–202. Carter, 121 S.W.3d at 585 ("[F]ailure to file any notice of sentencing is grounds for re-sentencing" (citing Pender, 687 S.W.2d at 719–20)).**

Id. at 507-08 (emphasis added).

The State's notice prior to Petitioner's first trial cited Tenn. Code Ann. § 40-35-120; listed the prior convictions of Petitioner and his co-defendant; and gave notice that Petitioner was a "Repeat Violent Offender." (Docket Entry No. 43-1 at 3). For this notice, Tennessee law requires a statement setting forth "the dates of the prior period of incarceration" as well as well as the nature of the

convictions. Tenn. Code Ann.§ 40–35–120(i)(2). As a result of these omissions, the March 17, 1999 notice did not qualify as notice required by the repeat violent offender statute. Cooper, 312 S.W.3d at 506. As a factual matter, the State trial court implicitly accepted defense counsel's citation to his earlier decision on the issue of the lack of separate incarcerations because the trial court sentenced Petitioner as a "career offender". Thus, the state's first notice was rendered a nullity as matter of law and fact.

The State's second notice under Tenn. Code Ann. § 40-35-202(a)[5] on August 18, 1999 was for a sentence enhancement for Petitioner as a multiple, persistent and career offender. This notice was before Petitioner's first sentencing hearing. The second notice did not satisfy the statutory deadline period of such notice 10 days prior to trial for "multiple, persistent or career offender". Tenn. Code Ann. § 40-35-202(a). Petitioner was sentenced as a "career offender" that falls under Tenn. Code Ann. § 40-35-202(a). That section requires a mandatory notice prior to trial that was not provided by the March 17, 1999 notice and does not cite the career offender statute, Tenn. Code Ann. § 40-35-202. Under Cooper, this lack of notice results in an " unauthorized sentence [that] adversely affected a substantial right of [Petitioner] and that remedying this error is in the interest of substantial justice [requiring a] remand ... for re-sentencing in accordance with ... enhanced punishment as a multiple, persistent, or career offender pursuant to Tennessee Code Annotated section 40–35–202." 321 S.W.3d at 507-08. Although the multiple offender statute does not contain a mandatory statutory pretrial notice, the "career offender" statute does and Petitioner was sentenced as a "career" offender".

Assuming the State's 1999 notices would apply to Petitioner's retrial in 2004, that notice

---

[5] The notice also refers to Tenn. Code Ann. §40-35-106 et seq. that defines "multiple, persistent and career offenders".

remains deficient under Tennessee law. The State's August 1999 notice after Petitioner's first trial cannot cure the first notice that involved a separate statute and notice deadline: "The failure to file this notice prior to trial breached a clear and unequivocal rule of law that post-trial filing of the "Sentencing Position" failed to cure". Id. For Petitioner's 2004 retrial, the State's technical record is devoid of any notice. (Docket Entry No. 15-1). Petitioner's trial counsel at Petitioner's retrial lacked the requisite notice to provide assistance to Petitioner that is the purpose of the notice. There is not any evidence of Petitioner's trial counsel's objection to his enhanced sentence.

Respondent cites State v. Vance, No. 03C01-9508-CC-00253, 1996 WL 351464 at *1, 3-4 (Tenn. Ct. Crim. App. June 27, 1996) as controlling because there, the notice was given at the defendant's first trial, but not at his second trial. The Tennessee appellate court concluded because the defendant "was retried under the same indictment and for the same crime for which he had originally been tried there is no reason to believe enhanced sentencing would not apply to a conviction under the same indictment or in both trials" Yet, here, Petitioner's retrial was on a single charge as the other charges had been dropped. As to Petitioner's retrial, the first notice was for "repeat violent offender" penalty that is different from the career offender statute under which Petitioner was sentenced. Moreover, as a decision of the Tennessee Supreme Court, Cooper controls.

Here, Tennessee decisional law holds that the State's lack of notice, prior to trial, of the State's intention to seek an enhanced sentence for Petitioner as a "career offender", deprived the state trial court of its authority to impose the enhanced sentence of Petitioner as a "career offender". Thus, the Court concludes that Petitioner's default was caused by his counsel who would be the person responsible for raising legal defenses and objecting to the lack of statutory notice. Because Tennessee law deprives the state trial court of the authority to impose an enhanced sentence the Court

22

concludes that Petitioner has shown prejudice due to his trial counsel's omission in failing to raise this lack of notice defense. For these same reasons, the Court concludes that Petitioner has demonstrated a substantial claim and the exceptional circumstances under <u>Martinez</u> to present this ineffective assistance of counsel claim. This claim entitles Petitioner to habeas relief for serving an invalid sentence as a career offender. Under Tennessee law , the State trial court lacked the legal authority to impose that sentence.

Accordingly, this Court grants Petitioner the writ of habeas corpus only to the extent that Petitioner be resentenced under the multiple offender statutewithin 90 days of the entry of the companion Order.

An appropriate Order is filed herewith.

**Entered** this the _18th_ day of August, 2014

William J. Haynes, Jr.
Chief United States District Judge

\